■ In the Matter of DARREN HH., a Neglected Child. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; AMBER HH. et al., Appellants. (Proceeding No. 1.) In the Matter of DAKOTA II. and Others, Alleged to be the Children of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; AMBER HH., Appellant. (Proceeding No. 2.) In the Matter of DESTINY HH. and Others, Alleged to be the Children of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ROLLAND HH., Appellant. (Proceeding No. 3.) [898 NYS2d 315]—

Stein, J. Appeals (1) from three orders of the Family Court of Clinton County (Lawliss, J.), entered March 27, 2009, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10-A, to approve

petitioner's permanency plan, and (2) from two orders of said court, entered March 30, 2009, which, among other things, granted petitioner's applications, in proceedings Nos. 2 and 3 pursuant to Social Services Law § 384-b, to adjudicate the subject children to be the children of mentally ill parents, and terminated respondents' parental rights.

Respondent Amber HH. (hereinafter the mother) is the mother of five children (born in 1999, 2001, 2003, 2006 and 2008). Her husband, respondent Rolland HH. (hereinafter the father), is the father of the four youngest children. In 2004, the father pleaded guilty to one count of endangering the welfare of a child in satisfaction of criminal charges alleging, among other things, that he engaged in sexual intercourse with the mother's then 14-year-old sister. Due, in part, to such conduct and to the mother's refusal to acknowledge the father's behavior or its potentially injurious effect on her children, the four oldest children were removed from their home in June 2007. Following fact-finding and dispositional hearings held later that year, the children were found to be neglected. The children have remained in petitioner's custody since their initial removal from the home. Likewise, the mother's youngest child was placed in foster care immediately after his birth and was later found to be neglected (see Matter of Darren HH. [Amber HH.], 68 AD3d 1197 [2009], lv denied 14 NY3d 703 [2010]).* In August 2008, the father was found guilty of two counts of forcible touching and endangering the welfare of a child. Those charges related to an incident in 2005 wherein he placed his hands down the pants of his then three-year-old daughter and of the mother's then 11-year-old sister.

After directing that the mother and father undergo mental health evaluations and conducting a joint hearing, Family Court determined, in proceeding Nos. 2 and 3, that both parents were incapable, by reason of mental illness, of providing adequate care for their respective children and terminated their parental rights. The mother and father separately appeal. Contrary to their contentions, we are satisfied that petitioner met its burden of proving by clear and convincing evidence that they are unable, now and for the foreseeable future, to provide proper and adequate care for their children by reason of mental illness (see

---

* In proceeding No. 1, Family Court approved petitioner's permanency plan for this child and issued orders of protection against the mother and father on behalf of the child. Inasmuch as neither parent's brief raises any issues with regard to such permanency plan or orders of protection, their appeals therefrom are deemed abandoned (see Matter of Genasia C., 267 AD3d 893, 894 [1999]; Matter of Randy K. v Evelyn ZZ., 263 AD2d 624, 624 n 2 [1999]).

Social Services Law § 384-b [4] [c]; *Matter of Arielle Y.*, 61 AD3d 1061, 1062 [2009]) and we, therefore, affirm.

The only testimony presented at the hearing was that of Richard Liotta, a licensed psychologist, who interviewed both the mother and the father and administered psychological tests to them (*see* Social Services Law § 384-b [6] [c]). Liotta's opinion that both the mother and the father were mentally ill and that such mental illness affected their ability to parent now and in the foreseeable future was based on his interviews and review of testing results, as well as relevant documents, including previous mental health evaluations, court findings, a school psychoeducational report from the mother's childhood and various records provided by petitioner.

With respect to the mother, Liotta testified that she suffered from a personality disorder not otherwise specified with dependent, antisocial narcissistic features, as well as an anxiety disorder not otherwise specified with a history of posttraumatic stress disorder symptoms, borderline intellectual functioning and a learning disorder not otherwise specified. Notably, Liotta opined that the mother's mental illness diminished her ability to parent by, among other things, interfering with her capacity to be empathetic towards her children and to make good decisions and appropriate judgments due to her tendency to minimize, deny or distort information (*see Matter of Casey L. [Joseph L.]*, 68 AD3d 1497, 1498-1499 [2009]; *Matter of Jenna KK.*, 50 AD3d 1216, 1217 [2008], *lv denied* 11 NY3d 703 [2008]; *Matter of Ashley L.*, 22 AD3d 915, 916 [2005]). For example, despite the father's signed confession in 2004 regarding his sexual relationship with her sister and his 2008 convictions, the mother continued to deny that he was a threat to her children and maintained a relationship with him. Although Liotta acknowledged that the mother's insight had shown some recent improvement, he questioned the sincerity and lasting effect of such improvement and maintained that she had made no progress with regard to other deficiencies, such as her ability to multitask, show empathy for her children, follow petitioner's recommendations or adhere to court directives. He also opined that it would be very difficult for her to change those characteristics. Contrary to the mother's contention, Family Court was entitled to rely on Liotta's testimony and to draw an adverse inference from the mother's failure to testify on her own behalf (*see Matter of Jenna KK.*, 50 AD3d at 1217; *Matter of Allen DD.*, 17 AD3d 740, 743 [2005], *lv denied* 5 NY3d 704 [2005]; *Matter of Shawna U.*, 277 AD2d 731, 733 [2000]). To the extent that Liotta relied on information provided by petitioner, such reli-

ance merely affected the weight to be accorded his opinion (*see Matter of Donald W.*, 17 AD3d 728, 729 [2005], *lv denied* 5 NY3d 705 [2005]).

As to the father, Liotta diagnosed him with pedophilia nonexclusive type, personality disorder not otherwise specified with antisocial features and borderline intellectual functioning. Liotta testified that the father's personality disorder is characterized by impulsivity, a tendency to place his own needs above those of others and the failure to consider the welfare of others, a disregard for consequences and an overall lack of conscience. He further opined that those qualities were exacerbated by the father's pedophilia and that there was a diminished likelihood of improvement based on the manner in which the two disorders work in conjunction with one another. Significantly, Liotta emphasized that the father's adamant denial of any wrongdoing or concerns about his behavior makes it virtually impossible to treat his disorders.

Giving due deference to Family Court's factual determinations, and in view of the absence of any contradictory expert evidence, we find that petitioner's proof was sufficient to sustain Family Court's determination to terminate the parental rights of the mother and the father on the basis that their mental illness renders them unable to provide adequate care for their children now and for the foreseeable future (*see Matter of Michael WW.*, 29 AD3d 1105, 1106 [2006]; *Matter of Alexis X.*, 23 AD3d 945 [2005], *lv denied* 6 NY3d 710 [2006]; *Matter of Donald W.*, 17 AD3d at 729).

The remaining contentions of the parties have been considered and found to be without merit.

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.